Mr. Clerk, will you call the next case, please? 312-261, People of the State of Illinois, a plea by Jesus Carey v. Marlon A. Coleman, appellant by Michael Gomez. Mr. Gomez? May it please the Court? Good morning, Your Honors and Counsel. My name is Michael Gomez, and I'm an assistant appellate defender at the Office of the State Appellate Defender, and I'm here on behalf of my client, Marlon Coleman. We raised three issues in the briefs, but with the Court's permission, I'd like to focus today on the first issue, in which we argue that defense counsel was ineffective for failing to file a motion to suppress Mr. Coleman's statements taken in violation of his Miranda rights. Now, in this case, Mr. Coleman exercised his constitutional right not to testify at trial. But because no motion to suppress was ever filed, Mr. Coleman was essentially forced to testify against himself in clear violation of Miranda. Even worse, his inadmissible statements comprised the majority of the State's case, which consisted of just one live witness who himself testified to Mr. Coleman's inadmissible statements. And these statements tainted the jury's verdict, undoubtedly. So we ask simply that this Court give Mr. Coleman an opportunity to file a motion to suppress his statements and raise this constitutional violation for the first time. Now, here there are two sets of statements at play, and this Court just has to look at the record to see whether there is any information in the record that would lead to the conclusion that a motion to suppress statements would have been granted. And, Your Honors, this Court needs to look no further than the first minute after Mr. Coleman's formal arrest to make that determination. In State's Exhibit 2, which was the video of the traffic stop, at the 22nd minute, 22nd second, Mr. Coleman was placed under formal arrest. At that point, he was in custody by Officer Hulse. Now, immediately thereafter, Officer Hulse asked him, What do you got in your sock, dude? And then immediately thereafter, Mr. Coleman says, I don't have no drugs, man. I don't sell no drugs. So within the first minute of formal arrest, there is a Miranda violation. Even if this was suppressed, I mean, they don't need that to convict him. I mean, he's already been arrested for DUI, so they're going to do, you know, these things are going to be found. So, you know, I don't know how, even if this was suppressed, how it really is helpful to your client. What is the prejudice to him? Yes, Your Honor. This was just not one statement that was admitted against him. The videos comprised the majority of the State's case here. The first video was 39 minutes and 3 seconds. The second video, which was taken during the 20-minute mandatory observation period before the breathalyzer was supposed to be administered, that video that was entered and showed to the jury was 46 minutes and 12 seconds. Together, that was approximately one and a half hours of video, which contains numerous. We can submit all inadmissible statements on Mr. Coleman's behalf. Now, Officer Hulse's testimony, and although there are no timestamps in the records, there were 37 pages of direct examination testimony, 20 pages of cross-examination, and just one question on redirect examination. So in comparison, Officer Hulse's live testimony pales in comparison to the videos, which comprise the majority of the substance of the State's case. Now, these tainted statements that were admitted against Mr. Coleman caused significant prejudice. So to address directly Your Honor's question, the question here is whether there's a reasonable probability that the outcome would have been different. Now, it's not removing these statements and seeing whether the remainder of the evidence was sufficient to sustain this conviction. The court needs to look at how these statements affected the verdict and whether the jury would have come with the same verdict. Now, these statements, because they were so significant and comprised the majority of the State's case, it discredited Mr. Coleman, who did not even testify. Now, had he been on the stand and the jury could have made these credibility determinations on their own based on his demeanor there and his testimony, that's fine. But these tainted statements were admitted against him. They should never have been, but the jury was able to make these credibility determinations based on those statements in the videos. Further, the State introduced these statements three times. Well, introduced them twice in evidence and referred to them repeatedly in closing arguments. So it first introduced the statements through Officer Hulse's testimony. Then it played the one and a half hours of video for the jury. And then finally, during closing arguments, the State repeatedly referred to the statements, particularly that first statement that I mentioned earlier, the one where he says, I don't have no drugs, man. I don't sell no drugs. Now, this statement alone was the only evidence that the State below referred to to allow the jury to infer knowledge, which is a necessary requirement for them to convict Mr. Coleman of possession of a controlled substance. And I quote, the State said, how did he know it was drugs? Because he blurted it out a couple of times before the officer even got it. That's knowing. So the State referred to an inadmissible statement, to a tainted statement taken in violation of Miranda, and told the jury that it could infer a necessary element of the crime based on that statement. So we don't know whether the jury would have found that he knowingly possessed these drugs. In addition to those reasons, the jury was able to see the Officer Hulse's incredulous reactions to Mr. Coleman's statements throughout both videos. And we would submit that this is improper opinion testimony. He wouldn't be able to comment on his own perceptions of Mr. Coleman's statements. Finally, particularly in the second video, the one at the police station, there were some other crimes evidence that were able to be admitted through Mr. Coleman's statements, such as he had been in trouble before, he referenced a possible prior DUI, he said that he knew a lawyer. But Mr. Coleman didn't have a criminal history record, so the jury was able to draw inferences from those statements without any evidence to back those up. And even with regard to the DUI, because the majority of the state's case comprised of these inadmissible, tainted statements, that clouded the jury's perceptions of Mr. Coleman, allowed them to make credibility determinations, find him untrustworthy. So we don't know whether the jury would have made the requisite findings on the DUI charges. Now, why this is important here is that the DUI is a misdemeanor, and the possession is a felony. So even if this court finds that it wouldn't affect the DUI charge at all, the inadmissible statement went directly to the felony conviction, which, in all of its attendant circumstances. So this counsel's failure to file the motion to suppress was not strategic. In People v. Brown and People v. Miller, to be constitutionally effective, defense counsel has to raise constitutional violations. And here, constitutional violation was the majority of the state's case. And counsel did not raise any of those issues. So counsel's trial, even if it was counsel's trial strategy, had to be reasonable or sound. And here it was neither. The state argues that counsel referred to these videos and needed these videos as part of the evidence to contest the evidence. But the majority of defense counsel's usage of these videos was to refer to the field sobriety tests and Mr. Coleman's performance in those field sobriety tests, and it did not support a DUI conviction or the officer's belief that he was under the influence. So even if counsel wanted that part of the video, he could have filed a motion to suppress to exclude all of the tainted statements in the rest of the traffic stop video, and then filed that motion to suppress to exclude all the statements made at the police station, and been left with the most important part of the video that he needed. So, Your Honors, the Constitution gives us all the right not to incriminate ourselves and the right to effective counsel. Both of those rights were violated here. Mr. Coleman's tainted statements were admitted against him and comprised the majority of the state's case. So we're simply asking this court to find that Mr. Coleman's right to the effective assistance of counsel was violated so that he may have an opportunity to raise the Miranda violation for the first time. And we ask that this court reverse and remand for suppression. There are no further questions. Thank you. Thank you, Mr. Gomez. Ms. Kelly. Thank you. May it please the Court, counsel, as the people have stated in their brief, it's the people's position that the record is inadequate to allow review of the first issue raised by the defendant. The defendant, in fact, filed a pro se post-trial motion alleging, among other things, an effective assistance of counsel for counsel's failure to file a motion to suppress the statement. New counsel was appointed. It went to an evidentiary hearing, but the issue was never explored. As the trial judge said in denying the pro se motion for a post-trial motion, nothing was developed at all with regard to why counsel did not file a motion to suppress. It was the opportunity to make the record, didn't make the record. Additionally, this record is inadequate to consider the issue because we do not know what happened between the time of his arrest and the time he was placed in the intoxilizer room waiting to take the breathalyzer test. As even the defendant admits in his brief, it's perfectly possible that at some point he was Mirandized. If, in fact, he was given his Miranda warnings at a time when he was not being videoed either at the scene or at the time of his arrest. Therefore, the people would have had no obligation at that point. It's also not an obligation, maybe a strategy as it were. The people's strategy or defendant's strategy. What's at issue here today is the defense counsel's strategy. I understand that. I'm just teasing around the issue. We would certainly have a more complete record had that been there, but in the absence of that on the record, this court is unable to determine the issue of whether counsel was ineffective for failing to file a motion to suppress with regard to the second video. There may have been no opportunity, no possibility of filing one if, in fact, he'd been Mirandized either in the car when he arrived at the police station at some point prior to the video in that room being turned on, which was the 20-minute wait period for the breathalyzer test. So there's a gap in time. It's not memorialized. No questions, no record was developed as to it. It would be if the defendant raised this issue in a collateral proceeding and proceed to an evidentiary hearing on that basis. So for those two reasons, the people feel that the record is inadequate to review the issue at this point. Should the court find the record is adequate, then the people would submit that it was a question of strategy here. Defense counsel was able to get the defendant's statements, and rather than characterizing them as tainted, the people would characterize them as exculpatory. The defendant's statements were, I don't do drugs, those aren't my drugs, I don't know how they got there, et cetera, et cetera. The defense counsel certainly wanted evidence of the defendant's demeanor at the traffic stop in order to rebut the evidence that he was impaired. There was no breathalyzer examination. The people had to prove impairment. And as we can tell from counsel's cross-examination, he went over that video in great detail. He's not slurring his words. He's not tripping. He's able to do this. He's able to do that. That was his strategic reason for wanting that video in. Additionally, when asked the one question about what do you have in your sock, his volunteered statement, which was exculpatory. So the defendant had chosen not to take the stand, but by putting the videos in, the defense counsel was able to get all of the defendant's exculpatory statements before the jury without the defendant having to take the stand. The other point that people would respond to was that had the defense counsel made a motion and kept out all of these statements, that the evidence still would have been overwhelming that the defendant was guilty of the offenses. The item in the sock would have been removed and was removed as a search incident to a lawful arrest. The bill was unfolded. The pills were tested. The pills were shown to be morphine. The location of the pills in a crumpled up dollar bill on the inside of his sock alone was sufficient to prove knowledge. Once defense counsel chose not to object or not to do a motion to suppress and the videotaped statements were in, the prosecutor is free to argue inferences from all the evidence and did argue inferences from all the evidence. But even without that evidence, there's no reasonable probability that the outcome of the verdict would have been different because the drugs would have been found, the manner in which they were found, the place on the defendant's purse in which they were found would have been sufficient to prove knowledge. So even if this court would choose to find that the record is sufficient to evaluate defendant's ineffective assistance of counsel claim, the defendant has not satisfied either prong. He's not shown that it wasn't strategic and he's not shown that the defendant was prejudiced by the admission of these tapes. Thank you. Thank you, Ms. Kelly. Mr. Gomez, any rebuttal? First, the record is adequate. There is sufficient information in the record for the court to make the determination that it can make here, is that a motion to suppress would have been granted, at least in part. And we identified the first clear Miranda violation that would allow a lower court to exclude that statement. And then all the statements that happened at least at that traffic stop. Counsel is correct. We don't know what happened on the car ride between the traffic stop and the police station. That part of the record was never developed. And then what we do know is that there is no evidence in the record that Miranda warnings were ever given, not at the traffic stop and not at the police station. What we're simply asking is for Mr. Coleman to have the opportunity to raise these constitutional violations in the lower court, where this record can be developed and the lower court can make the appropriate determination of which statements should be excluded. As far as whether it was trial counsel's strategy not to file a motion to suppress. I stated earlier that trial counsel wanted these videos mainly for Mr. Coleman's behavior at the field sobriety test, not for the statements. And even counsel points to counsel's usage of the videos about Mr. Coleman's behavior at the field sobriety test, which has nothing to do with the statements that were made after he was placed under formal arrest by Officer Hulse and all of the incriminating statements he made at the police station. Miranda versus Arizona clearly applies to exculpatory statements. And in that case, the Supreme Court said that exculpatory statements when introduced against a defendant are not truly exculpatory. If the state really thought that these statements were exculpatory, they never would have been admitted in the first place. Instead, these statements were admitted to show guilt by implication. How do we know that? Because the state referred to the statements themselves in closing and saying that the jury could infer knowledge based on these inadmissible tainted statements. Now, counsel also referred to Mr. Coleman's statements as volunteered. And in counsel's brief, at one point mentioned a volunteered answer. Now, the law has never referred to these as volunteered answers. They're volunteered statements, meaning they're spontaneous and they are borne out of the defendant. Now, here, there was custodial interrogation immediately after being placed under formal arrest. Officer Hulse asked him a question, what's in your sock, dude? This placed Mr. Coleman in the classic trilemma that Miranda was supposed to avoid, which is either accuse himself, perjure himself, or remain silent without knowing the intended consequences. And here, Mr. Coleman said, I don't do drugs, man, I don't sell drugs. On the face, that's exculpatory. But we know that the prosecution used these statements to prove guilt by implication. And they tried to, or they did argue to the jury that the jury could infer knowledge, a necessary requirement, based on this inadmissible statement. Now, counsel referred to the overwhelming evidence in support of Mr. Coleman's conviction, aside from these tainted statements. Now, I'd like to remind this court that the question now is not whether there's sufficient evidence to sustain a conviction, but whether we are confident that the jury would have reached the same verdict without these tainted statements. Now, were these tainted statements comprised the majority of the state's case, there is no guarantee that the jury could have formed that same verdict. I have a confession to make. I have not reviewed the pre-sentence investigation in the record. Did your client have a prior felony conviction that could have been used to impeach him at trial? No, ma'am. He did not. Because perhaps there was a defense strategy to get his version of the events into the jury. I mean, he was denying. I've never seen ecstasy. I just get this gutted look from a girl. I mean, really, the jury got to hear his side of the story without him being impeached at all. Yes, Your Honor. Why couldn't that have been the defense strategy? Because these were clearly taken. First, they were wavering excuses. So it discredited Mr. Coleman. These weren't excuses, his versions of the event that were consistent from the very beginning. These were different versions of the event that he made statements about, both at the traffic stop and then at the police station. So, counsel's usage of the video also was not to get these statements in. And counsel didn't even argue about these statements. Effective counsel would have raised a constitutional violation. In People v. Brown and People v. Miller, those courts stated that effective counsel raises constitutional violations. And where those violations comprise the majority of evidence against a defendant that cannot stand, that cannot support reasonable counsel's decisions. And here, because counsel was ineffective, because his strategy was not sound, his strategy was not reasonable, that strategy cannot save him from being ineffective. So, with that, we ask that this Court reverse Mr. Coleman's conviction and remand for a subversion hearing. Thank you. Thank you, Mr. Gomez, and thank you both for your argument today. We will take this matter under advisement and get back to you with a written decision within a short day.